IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-160-FL

| | |
|---|---|
| GORDON GRAVELLE o/a CodePro Manufacturing, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  ORDER<br>) |
| KABA ILCO CORP. and CHUCK MURRAY, | )<br>)<br>)<br>) |
| Defendants. | |

This matter is before the court on various motions (DE 1, 10, 23, 28). Pending before the court is plaintiff's motion to vacate arbitration award, as recently supplemented. Also pending is defendants' responsive motion to confirm the award. There also is a motion by plaintiff for leave to file reply that exceeds page limitations. Plaintiff's reply at issue (DE 28) is accepted in the record by the court. For reasons that follow, plaintiff's motion to vacate is denied, and defendants' motion to confirm is allowed.

## BACKGROUND

This civil action was filed under Section 10 of the Federal Arbitration Act ("FAA") on March 1, 2012, by a *pro se* plaintiff who resides in Canada. Plaintiff is owner and operator of a manufacturing company in the business of making electronic key-cutting machines, which is named "CodePro Manufacturing." Plaintiff did not initiate the action with the filing of a complaint. Instead, he filed a motion to vacate arbitration award, which motion recently was supplemented.

Plaintiff refers to the fact that the American Arbitration Association ("AAA") issued a

partial final award ("Partial Final Award") on December 4, 2012, now made final, in his motion as originally filed. Plaintiff argued in that filing that the arbitrator "exceeded and/or imperfectly executed his powers such that a mutual, final, and definite award about the subject matter was not made; and/or because the arbitrator acted with a manifest disregard for the law; and/or because the award clearly violates public policy; and/or because there was no valid and enforceable agreement to properly invoke the arbitration process; and/or the arbitration unjustly refused to hear evidence, and acted in such a way as to prejudice the claimant." Pl.'s Mot. to Vacate, p. 1. His recent submissions amplify on these contentions in the context of a final award.

The corporate defendant is in the key business on a global basis. The individual defendant acted as manager of the corporate defendant during the time period at issue. The parties interacted beginning in 2004, at a trade show. Plaintiff and the individual defendant later began to explore a professional relationship, which initially matured in late 2006, when agreement was entered into as between plaintiff and the corporate defendant for defendant's purchase of rights in a specific key-cutting machine and its source code, together with plaintiff's related services. Problems in development accrued, leading in 2008 to further agreements as the business relationship between the parties evolved.

The dispute at issue between the parties arises over enforceability of that agreement plaintiff entered into with defendants April 21, 2008 (sometimes the "April 2008 Addendum"), which contains a mandatory arbitration clause. Binding arbitration administered by the AAA in accordance with the FAA is provided for in that agreement as to a laundry list of disputes therein specified, with venue for any arbitration being in Nash County, North Carolina. Ultimately, in 2011, plaintiff

invoked arbitration, targeted towards invalidation of the non-competition agreement as between the parties.

Defendants' response in arbitration included their position that the arbitration agreement is valid and binding, and their contention that the arbitrator should decide all disputes between the parties. The parties later executed a stipulation, referred to as the "June 2011 Stipulation." It was agreed therein that if the arbitration agreement was valid and binding, it applied to any and all disputes, including those which were the subject of the case then ongoing in Canada. That issue of enforceability, the parties decided, would be submitted as a threshold issue in arbitration. The individual defendant stipulated to having plaintiff's claims against him also resolved in arbitration. Defs.' Response, Ex. 10.

Plaintiff later stipulated to enforceability of the arbitration agreement, and agreed to dismissal of his suit brought in Canada, subject to certain conditions. That stipulation, referred to as the "October 2011 Stipulation," was derived as a result of substantial, continued negotiations between the parties, during which time plaintiff had benefit of counsel. The October 2011 Stipulation recites in part:

> 1. The arbitration clause ("Arbitration Clause") contained in the April 2008 Addendum to the Software Purchase and Sale Agreement between Kaba Ilco Corp. and Gordon Gravelle, personally and as sole proprietor of CodePro Manufacturing, dated November 10, 2006 (collectively, "Agreement") is (a) valid and enforceable under applicable law, and (b) applies to any and all disputes between the parties arising therefrom, including all claims and causes of action alleged (or that could have been alleged) in the [Ontario lawsuit].

Defs.' Response, Ex. 11.

Plaintiff followed with his amended arbitration claim on October 28, 2011, seeking rescission and damages due to alleged wrongdoings by defendants. Alternatively, he sought damages for

3

breach. Additionally, a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") was asserted. Plaintiff also sought to invalidate contractual restraints on his competition and solicitations. The arbitrator agreed with plaintiff that those restraints were invalid. Defs.' Response, Ex. 15. This was not contested by defendants.

Defendants however successfully challenged most of plaintiff's claims in a motion to dismiss, resulting in that Partial Final Award issued December 4, 2012. The one claim of breach related to alleged failure by the corporate defendant to purchase circuit boards was withdrawn and the final arbitration award ("Final Award") eventually issued. Defs.' Response, Ex. 22.

In mid June of this year, during pendency of the action, each side noticed the court that on May 29, 2013, the arbitrator issued his Final Award in this matter. In that notice filed by defendants June 13, 2013, defendants presented that:

> The Final Award expressly incorporates the Arbitrator's Partial Final Award of December 2012, which is the subject of Petitioner's pending Motion to Vacate and Respondent's pending Motion to Confirm. Additionally, the Final Award (1) reflects Petitioner's withdrawal of his sole remaining claim in the arbitration proceeding, (2) holds that the administrative fees and expenses of the ICDR as well as the compensation and expenses of the Arbitrator shall be borne one-half by Petitioner and one-half by Respondents, and (3) constitutes a 'full settlement of all claims submitted in th[e] Arbitration. As such, the Final Award does not impact the substance of the Partial Final Award.

Defs.' Notice of Issuance of Final Arbitration Award 1. The Final Award conforms to this recitation. Pl.'s Notice, Ex. 1

Plaintiff sought leave to supplement his motion to vacate filed March 1, 2013, which request was allowed. Plaintiff's request that the court to impose a fixed briefing schedule, in avoidance of

4

confusion and piecemeal responsive briefs, also was agreed to by the court in its order entered August 1, 2013.[1]

On August 14, 2013, plaintiff sought more time to make his supplemental filing, where the deadline was set to expire that day. He made mention of being rushed to the local emergency department for life saving treatment August 9, 2013. A modest two-day extension was requested, which extension was unopposed. This was allowed.

On August 16, 2013, plaintiff filed his amended motion to vacate arbitration award and response to defendants' motion to confirm, in supplement to the one which started this case, filed March 1, 2013. Defendants' response was received August 30, 2013.

On September 5, 2013, plaintiff sought more time up to and until September 11, 2013, within which to make his reply. Necessity for time extension was rooted in his health condition, travel issues, and work constraints. Over defendants' objection, the motion was allowed. On September 11, 2013, plaintiff made his reply. Embedded in that reply is a motion to exceed page limitations, and while response time has not yet run, that motion the court does now allow, where the extra pages are minimal and no prejudice accrues to defendants.

---

[1] In that August 1, 2013, order, the court also addressed a certain series of motions where plaintiff had collapsed onto his opposition to the motion to confirm a motion seeking the court to dispose simultaneously of his motion and defendants' contrary one. As noted, lodged in a notice filed by plaintiff, were several more motions. Plaintiff sought to withdraw the one filed earlier, requesting a stay, in light of issuance of the Final Award, and requested leave to supplement his pending motion to vacate, which request, the court noted, had sounded in several filings. There also was that motion by plaintiff urging the court to address the motions and, if his request to supplement was allowed, to set a briefing schedule. The court allowed in its order entered August 1, 2013, plaintiff's request to withdraw motion to stay. As noted, plaintiff was allowed to supplement his motion to vacate, and a briefing schedule therein outlined was established. The court indicated it would take up and decide remaining motion to vacate and that one in response, seeking the court to confirm the award, pending further briefing.

5

Case 5:13-cv-00160-FL   Document 29   Filed 09/16/13   Page 5 of 9

## COURT'S DISCUSSION

The court turns to the motions at issue, of or relating to enforceability of the Final Award under the FAA. Plaintiff seeks to vacate the Final Award issued by the arbitrator which award incorporates the arbitrator's earlier Partial Final Award. The arbitrator granted defendants' motion to dismiss as to all but one of plaintiff's claims in arbitration. The Final Award also reflects plaintiff's decision to withdraw his final, remaining claim. Fee issues also are addressed therein.

Plaintiff amplifies upon arguments in his recent filings which have resonated throughout the course of the litigation. He asserts vigorously that the parties' arbitration agreement is void and unenforceable and, therefore, the arbitrator was without authority to issue the award. Plaintiff would seek to show that the arbitration agreement is unconscionable and unenforceable. He complains he was under economic duress at the time he entered into the June 2011 Stipulation. Plaintiff also asserts procedural irregularities including failure of the arbitrator to hold any evidentiary hearing.

Plaintiff, proceeding *pro se*, expends much effort in his briefs to describe his views of the actions and conduct of defendants in business dealings in 2008, and legal ones following, and the physical and mental affects upon him. Plaintiff's angst is plainly etched on his case filings.

In supplemental affidavits, entered into the record August 16, 2013, plaintiff offers his own testimony of events, including with regard to the personal anguish he suffered. He also relies on the testimony of his former lawyer, Barry Leon, who provided counsel in connection with plaintiff's claims against defendants and ensuing legal negotiations. Among other things, Leon refers to the dismissal by stipulation of the parties of the Canadian action. After negotiations failed, another suit was brought on plaintiff's behalf, he notes. Apparently, plaintiff sought to show in that proceeding that the arbitration agreement was unenforceable. Leon offers sworn statements also concerning

initiation by plaintiff of arbitration. Leon described Canadian legal procedures. He offers certain hypotheticals bearing on processes and costs. Plaintiff's other affidavit was made by Laurie Waters. Waters presents herself as a good, concerned friend, who witnessed plaintiff's erratic behaviors, due in her opinion to his financial status.

Defendants seek to confirm the award under the FAA. Defendants lay out in comprehensive briefing deficiencies in plaintiff's claims, also supported by the parties' documentation. Defs.' Response, Exs. 1-23. Defendants' detailed argument correctly begins with the correct standard of review, and moves into a point by point refutation of plaintiff's claims and why they must fail under law. Defs.' Response 12-22. In his amendment filed August 16, 2013, plaintiff would seek to meet some of the deficiencies pointed out by defendants, but his salvos fall far from the marks set by defendants, with reliance on largely inapposite case law.

Plaintiff's showing includes calculation of arbitration expenses incurred and projected. Defendants do not directly meet his argument that the agreement should not be enforced because of the expense of arbitration. In light of the record developed here, the argument is worthy of consideration. It should be noted that in this case, plaintiff's status is very different from that of the alleged aggrieved party in Green Tree Financial v. Randolph, 531 U.S. 79 (2000). Plaintiff here invoked arbitration and engaged in it, with benefit of counsel, for a lengthy time period. Ultimately, this also goes against plaintiff's companion arguments that the agreement was unconscionable. In the Green Tree decision on which plaintiff relies, the Supreme Court addressed enforceability of an arbitration agreement where federal claims were involved. In Green Tree, the Court stated "In considering whether respondent's agreement to arbitrate is unenforceable, we are mindful of the FAA's purpose 'to reverse longstanding judicial hostility to arbitration agreements . . . and to place

7

arbitration agreements upon the same footing as other contracts.'" Id. at 89 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). In its holding, the Supreme Court also made reference to the "'liberal federal policy favoring arbitration agreements.'" Id. at 91 (quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

Plaintiff has not and indeed cannot in this instance sustain the burden of showing a set of costs, existing and/or anticipated, that would render invalid the agreement here to arbitrate. The court places the arbitration agreement at issue in this case upon the same footing as other contracts. Where the parties were sophisticated business players who bargained with benefit of counsel at key junctures for the agreement which plaintiff himself sought to enforce, the facts fail to support plaintiff's arguments that the parties' arbitration agreement is void and unenforceable and, therefore, the arbitrator was without authority to issue the award.

Plaintiff cannot show in these circumstances, for those reasons also detailed by defendants, that the arbitration agreement is unconscionable and unenforceable. The court does not minimize plaintiff's complaints of economic duress at the time he entered into the June 2011 Stipulation, but these afford in this case insufficient grounds to invalidate the agreement. Plaintiff's complaints of procedural irregularities including failure of the arbitrator to hold any evidentiary hearing also must fail, again for reasons noted by defendants.

Plaintiff, proceeding *pro se*, has expended much effort to advance his views of the actions and conduct of defendants in business dealings in 2008, and the legal ones following, and the physical and mental affects the maneuverings of the parties had upon him. However, these recitations, and the record as a whole, cannot under law propel plaintiff's long litigated complaints

8

Case 5:13-cv-00160-FL   Document 29   Filed 09/16/13   Page 8 of 9

now forward. His motion must be denied. Under law, defendants' motion to confirm arbitration award must be allowed.

## CONCLUSION

For reasons stated, plaintiff's motion for leave to file reply brief exceeding established page limitations (DE 28) is ALLOWED. Plaintiff's motion to vacate arbitration award, as supplemented (DE 1, 23) is DENIED. Defendant's motion to confirm the award (DE 10), deemed directed to the May 29, 2013, Final Award is ALLOWED. Judgment is entered in favor of defendants in accordance with that award. The clerk is DIRECTED to close the case.

SO ORDERED, this the 16th day of September, 2013.

LOUISE W. FLANAGAN
United States District Court Judge